JIMÉNEZ *v.* CARTEGENA.

APPEAL from the District Court of San Juan, Section 1.

No. 815.—Decided June 21, 1912.

EXECUTION OF JUDGMENT.—The provisions of section 1068 of the Civil Code and of article 923 of the old Law of Civil Procedure are applicable only to cases where the execution of a judgment becomes impossible by reason of some act done by the defendant himself, but not where the impossibility of complying therewith is due to acts of the plaintiff, as occurs in this case.

ID.—JUDGMENT—RETURN OF PAYMENT UNDULY RECEIVED.—When in a judgment rendered in an action to recover an undue payment the court directs that both litigant parties return what each had received, the plaintiff, under pretext that it is impossible for him to return what he had received, cannot ask the court after judgment has been rendered and during the proceedings for the execution thereof to oblige the defendant to pay to him the amount which said defendant had unduly received.

APPEAL—UNAPPEALABLE ORDERS.—The decision rendered by the trial court in the case at bar overruling a motion of the plaintiff praying that the defendant be obliged to pay him what said defendant had unduly received is unappealable because it has not the character of a special order entered after final judgment.

The facts are stated in the opinion.

*Mr. José de Guzmán Benítez* for appellant.

*Messrs. Bosch & Soto* for respondent.

MR. JUSTICE WOLF delivered the opinion of the court.

This case comes to us by reason of an appeal from an order of the District Court of San Juan denying a motion whose alleged purpose was to ask the aid of the court in the execution of a judgment. The record consists of the order from which the appeal is taken, the motion leading up to the same, the original judgment, and the findings of fact of the court.

It appears from the findings that on June 1, 1908, Emilio Jiménez and Juan José Cartegena made a verbal contract by which they formed an industrial partnership called Cartagena & Jiménez, with residence in San Juan, whose business was to engage in engineering work, which firm was bound to divide evenly, between the two partners, the net results of what they obtained, and that from the date aforesaid the society carried out the purposes for which it was organized without ever having formally made articles of partnership, but the said partners acting as such in the use of the partnership name. That on March 6, 1911, the partners agreed to make, and did make, a balance of their partnership affairs, which balance was struck and written out by Emilio Jiménez with the intervention and consent of Juan José Cartegena. Upon making this balance, finds the court, an error arose of including in the same, as part of the capital of the firm, divers items of profits variously obtained in the sum of $10,142.14, which amount

really was nonexistent because it had been received and spent previously by the same partners. As a consequence of this error, the mistake was made of assigning to each partner, after deducting all the accounts, a larger credit than in reality belonged to each one; to Juan José Cartagena the sum of $4,429.20 and to Emilio Jiménez $4,853.35. Upon settling the definite liquidation of the partnership affairs on April 19, 1911, to determine the net credit of Cartegena, they took the former liquidation as a point of departure, commencing the credit account of said Cartegena with the item of $4,429.20, which, united with other items of profits from March 6, 1911, to April 18 of the same year, formed a credit balance in favor of Cartagena in the sum of $5,482.19, which was the price of his partnership share, Cartagena having received in small amounts the sum of $82.19. On May 3, 1911, both partners executed a deed of dissolution of the firm, as well as a bargain and sale of the share of Cartagena, in the sum of $5,400 balance, of which sum Jiménez had turned over $5,000 to Cartagena before the execution of the deed. The error being shown on the trial, the court goes on to say that the result is that upon the dissolution of the partnership the share of Cartagena only amounted to $2,872.53, and it being demonstrated that $5,000 was paid him, the conclusion is that he unduly received the sum of $2,209.66, which sum he should be obliged to return.

Then the court goes on to point out that under the conditions of this dissolution and sale, and the discovery of the error, that the law provides for the annulling of the payment made under such conditions and the restoring of things to the state that existed before the occurrence of the error, as pointed out by Manresa in his Commentaries on the Civil Code, Vol. 12, page 576. And the court concludes that Cartagena is under the obligation of restoring the sum that was unduly paid him, and that Jiménez is also under the obligation to restore the share received by him and reestablish things to the same state they formerly had. The judge also remarks that Cartagena consented in selling his share, but, as there was an error

in the amount, it was evident that this consent was vitiated by the error; and that it should be borne in mind that the defendant agreed to return the amount if the complainant would agree to rescind the contract and restore the *status quo*, and the court cites Manresa again to the same effect. In furtherance of his findings and conclusions, the court, on November 11, 1911, rendered a judgment by which it is ordered and decreed that the two partners should mutually restore to the partnership the things that they had unduly received—that is to say, that Cartagena should return to the firm the whole sum received by him, and the defendant Jiménez should restore to such firm the whole share which he had received—things thus being placed in the state which existed before the execution of said contract.

Thereupon, on December 16, 1911, Emilio Jiménez, through his attorneys, came into court, setting up the facts of the foregoing judgment and complaining that he would be unable to carry out the terms of the same because, some time subsequent to the dissolution of the firm and while the action was pending, he had formed a partnership with Antonio Ribot, Francisco del Valle Atiles and Francisco del Valle Muñoz, and it would be impossible to go on with the previous partnership with Juan José Cartagena because he had transferred to the new firm all the implements and utensils of the dissolved partnership; and the petitioner asked the court, by virtue of sections 1068 of the Civil Code and 923 of the former Code of Civil Procedure, and by way of execution of the judgment in this case, that Cartagena be required to pay to Jiménez the balance which the court had found was erroneously estimated in the accounting of the partners.

It is evident that during the pendency of the original action, and before judgment, the complainant, although then asking for the return of the money alleged to have been unduly paid to defendant and respondent, formed a partnership with and implements which had formerly belonged to the firm of Cartagena & Jiménez, and in this way created the impossi-

bility of which he complains in his motion.  Just what these utensils and implements were does not appear from the record; but it does appear from the motion of the appellant made in the court below that he regarded the restoring of the *status quo* as having become impossible.  The court, as we have seen, decided that where two persons consent to a contract, and the consent of one is induced by an error of fact, that the proper way to remedy the error is to restore the conditions as they previously existed.  The respondent had consented to a dissolution because he thought that a certain sum was to be paid him, and he had a right to be placed in a position where he might be duly compensated for his interest, whatever it was.  The court properly took this view of the case in its findings and judgment.  The appellant, if he wished to avail himself of the action he had initiated, should have preserved the *status quo*.  Section 1068 of the Civil Code and 923 of the former Code of Civil Procedure apply to cases where the defendant, on account of some act of his, makes the execution by the complainant impossible.  Here, however, the difficulty was created by the complainant himself.  He permitted the case to be tried, and, during the trial thereof, neither showed nor suggested that he had transferred the working utensils of the partnership of Cartagena & Jiménez to another firm.  If he had done so, the court might then have ordered a different kind of relief, or perhaps decided that the complainant had mistaken his cause of action.  The pleadings in the original case are not before us.  The motion of the complainant was directed, not toward a reopening of the judgment, or of a new trial where all the facts might be reviewed, but was asking that the court should decree the payment by Cartagena of the sum found due in the corrected accounting. This was the kind of relief that should have been sought either in the main suit or by way of some other form of action.  It seems to us that the judgment disposed of the whole controversy between the parties, and that the matter, raised by the motion should have been the subject of discussion in the

pleadings and proof that led up to the judgment, so that there might be a final determination of the rights of the parties. The judgment was such a final determination and the law did not give the complainant the remedy by way of execution that he sought, because the rights of the parties in this regard were already determined by such judgment. The judgment was responsive to the complaint and the proof, and, as we have said, decided the whole controversy and was not appealed from.

The said judgment was not appealed by either of the parties, and, as the question raised by the complainant with regard to the execution was one which had been decided by the trial judge in harmony with what he had already decided in such judgment, a reversal will not lie. Besides, under such circumstances, the order appealed from was not a special order dictated after a final judgment and no appeal under section 295 of the Code of Civil Procedure can be entertained, in accordance with the principle announced by this court and by the Supreme Court of California in the following cases: *Avalo Sánchez* v. *Díaz,* 9 P. R. R., 310; *Ayoroa* v. *Estate of Méndez,* 13 P. R. R., 278; *Ríos* v. *Ríos,* 15 P. R. R., 264; *Tupp* v. *Santa Rosa Street R. R. Co.,* 69 Cal., 632.

The appeal is dismissed.

*Dismissed.*

Chief Justice Hernández and Justices MacLeary, del Toro and Aldrey concurred.